# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

JENNIFER LYNN HALLAUER,

        Plaintiff,

vs.　　　　　　　　　　　　　　　　　　　　　　　Case No. 3:16-cv-1136-J-JRK

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Jennifer Lynn Hallauer ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is a result of "[a]nxiety [p]anic [a]ttacks," depression, uncontrolled diabetes, and neuropathy. Transcript of Administrative Proceedings (Doc. No. 10; "Tr." or "administrative transcript"), filed March 3, 2017, at 82, 93, 183 (emphasis omitted). On October 10, 2012, Plaintiff filed an application for DIB, alleging an onset disability date of August 31, 2012. Tr. at 168.[2] Subsequently, Plaintiff amended the alleged onset date to November 1, 2009, Tr. at 183, and later amended it again to

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed March 3, 2017; Reference Order (Doc. No. 13), entered March 7, 2017.

[2] Although actually completed on October 10, 2012, see Tr. at 168, the protective filing date of the DIB application is listed elsewhere in the administrative transcript as October 2, 2012, see Tr. at 82.

September 30, 2009, Tr. at 55. Plaintiff's application was denied initially, see Tr. at 81, 82-91, and was denied upon reconsideration, see Tr. at 93-105, 106.

On January 26, 2015, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 40-80. At the time of the hearing, Plaintiff was forty-one years old. See Tr. at 74. The ALJ issued a Decision on February 20, 2015, finding Plaintiff not disabled through the date last insured. Tr. at 19-34.

The Appeals Council then received additional evidence consisting of medical records, see Tr. at 555-753, third-party statements from Plaintiff's mother and aunt, see Tr. at 294-303, and a brief authored by Plaintiff's counsel, see Tr. at 257-59. Tr. at 5-6, 7-8. On July 8, 2016, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On September 7, 2016, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises the following issue: Whether "the ALJ adequately evaluate[d] the record evidence from Dr. [Michael] Pruitt, [Plaintiff's] treating mental health physician, who offered medical opinions supportive of a finding that [Plaintiff] could not meet the demands of any work on a regular, reliable and competitive basis, due to her mental impairments and resulting functional limitations." Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 15; "Pl.'s Mem."), filed May 4, 2017, at 6. Specifically, in addressing this issue, Plaintiff makes three arguments: 1) "[t]he medical opinions and findings of Dr. Pruitt are entitled to controlling weight," Pl.'s Mem. at 10

(emphasis omitted); 2) "[t]he ALJ failed to offer good cause reasons grounded in substantial evidence to, in essence, disregard the opinions of Dr. Pruitt," id. at 13 (emphasis omitted); and 3) "[t]here is no real-world justification to find Dr. Pruitt's opinions to be of 'no weight,' but Dr. [Kristen] Schmits'[s[3]] to have 'little weight,' i.e., more than Dr. Pruitt, and that Dr. Schmits found [Plaintiff] possibly unable to work is telling," id. at 19 (emphasis omitted). On June 27, 2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 16; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th

---

[3] Dr. Schmits is an examining doctor, who evaluated Plaintiff at the request of the SSA. See Tr. at 335.

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 21-34. At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of September 30, 2009 through her date last insured of December 31, 2014." Tr. at 21 (emphasis and citation omitted). At step two, the ALJ found that through the date last insured, Plaintiff "had the following severe impairments: obesity, a history of headaches, diabetes mellitus, diabetic neuropathy, depression, post-traumatic stress disorder (PTSD) and anxiety with panic attacks." Tr. at 21 (emphasis and citation omitted). At step three, the ALJ ascertained that through the date last insured, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 21 (emphasis and citation omitted).

The ALJ determined that Plaintiff had the following residual functional capacity ("RFC") through the date last insured:

> [Plaintiff could] perform medium work as defined in 20 [C.F.R. §] 404.1567(c). Specifically, [Plaintiff could] lift and/or carry up to [twenty-five] pounds frequently (2/3 of the workday), and [fifty] pounds occasionally (1/3 of the workday); [Plaintiff could] sit up to [four] hours at a time, for a total of [eight] hours per day; [Plaintiff could] stand and/or walk for a total of [four] hours at a time, and for a total of [eight] hours per day; [Plaintiff could] occasionally climb ladders[ ]; [Plaintiff could] frequently climb ramps/stairs. She [could] frequently balance, stoop, kneel, crouch, or crawl. [Plaintiff was to] avoid concentrated exposure to extreme temperatures and hazards including unprotected heights and dangerous machinery. Mentally, [Plaintiff was] precluded from performing complex tasks. However, [Plaintiff was] capable of completing simple, routine tasks consistent with unskilled work with concentration on most tasks for [two] hour periods with normal breaks and a lunch. [Plaintiff was to] have no more than occasional (1/3 of the day) interaction with the public, co-workers, or supervisors.

Tr. at 23-24 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that "[t]hrough the date last insured, [Plaintiff] was unable to perform any past relevant work." Tr. at 32 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("[forty-one] years old . . . on the date last insured"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "[t]hrough the date[ ] last insured, . . . there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," including "Dining Room Attendant," "Floor Waxer," and "Marker." Tr. at 33; see Tr. at 33-34. The ALJ concluded that Plaintiff "was not under a disability . . . at any time from September 30, 2009, the alleged onset date, through December 31, 2014, the date last insured." Tr. at 34 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is

reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The undersigned sets out the parties' arguments and applicable law. Then, Plaintiff's arguments are addressed.

### A. Parties' Arguments

As noted, Plaintiff generally takes issue with the ALJ's evaluation of the medical evidence from Dr. Pruitt—Plaintiff's treating psychiatrist—and in doing so, makes three arguments. First, Plaintiff contends that Dr. Pruitt's opinion is entitled to controlling weight, Pl.'s Mem. at 10, and requests that the Decision be remanded "with instructions that the Commissioner provide controlling weight to the opinions of Dr. Pruitt," id. at 13. Second, Plaintiff argues that the Decision should at least be remanded for further proceedings because in discounting Dr. Pruitt's opinion, the ALJ failed to provide "good cause" reasons supported by substantial evidence. Id. at 13. Plaintiff asserts that Dr. Pruitt's treatment notes "consistently reveal the fact that [Plaintiff] frequently reported significant symptoms on a routine and consistent basis." Id. at 16. Plaintiff further contends that the "[t]he entire[t]y of the notes and opinions of Dr. Pruitt are not even or are barely noted in the ALJ's opinion." Id. Third, Plaintiff asserts the ALJ's finding that the opinion of Dr. Pruitt, a treating

psychiatrist, was entitled to less weight than the opinion of Dr. Schmits, a one-time examiner, is "troublesome and difficult to justify." Id. at 20.

Responding, Defendant argues that "the ALJ reasonably rejected Dr. Pruitt's opinion because the opinion contradicted his own treatment notes, which reflected stability and good progress." Def.'s Mem. at 12. With regard to Plaintiff's argument that the ALJ failed to fully discuss Dr. Pruitt's treatment notes, Defendant asserts that the ALJ is not required to "specifically refer to every piece of evidence . . . ." Id. at 15 (quoting Dyer, 395 F.3d at 1211). Defendant also contends that "Plaintiff's argument that the ALJ erred in giving [Dr. Schmits's] opinion more weight than Dr. Pruitt's opinion lacks merit, as the ALJ similarly rejected [Dr. Schmits's] statement regarding Plaintiff's psychiatric impairments by giving it 'little weight.'" Id. at 17.

## B. Applicable Law[5]

The Regulations establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area

---

[5] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations that were in effect on the date of the ALJ's Decision, unless otherwise noted.

[6] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

---

[7] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, __ F.3d __, No. 17-11683, 2018 WL 1061567 (11th Cir. Feb. 27, 2018); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Hargress, 2018 WL 1061567; Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence

supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Hargress, 2018 WL 1061567; Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

**C. Medical Opinions at Issue/Analysis of ALJ's Decision**

Dr. Pruitt is a psychiatrist, who treated Plaintiff a number times from March 19, 2012, Tr. at 342, through at least August 22, 2014, Tr. at 447. See Tr. at 340-48, 367-72, 447-48. On August 7, 2013, Dr. Pruitt completed a Mental RFC Assessment in which he opined that Plaintiff had moderate to marked limitations in performing certain work-related tasks associated with the areas of understanding and memory, concentration and persistence, social interaction, and adaption. See Tr. at 438-39. The Mental RFC Assessment consisted of a checklist and did not include an explanation for the opined limitations. See Tr. at 438-39.

Dr. Schmits evaluated Plaintiff on February 23, 2013 at the request of the SSA. See Tr. at 335. On the same date, she prepared an Internal Medicine Report containing her findings. See Tr. at 335-38. With regard to Plaintiff's mental health, Dr. Schmits stated in the Internal Medicine Report that Plaintiff "has several psychiatric conditions that may possibly limit [Plaintiff's] capacity to successfully maintain a job." Tr. at 337.

The ALJ gave "no weight" to Dr. Pruitt's opinion as expressed in the Mental RFC Assessment because "it contradicts [Dr. Pruitt's] own treatment notes reflecting stability and good progress." Tr. at 29. Specifically, the ALJ made the following findings:

> Dr. Pruitt's March 2012 evaluation revealed a pleasant cooperative female with good eye contact and good spontaneous speech. She was fully oriented and her memory and cognitive functioning were intact. Her affect was moderately depressed, but she was without perceptual disturbances. Her insight and judgment were both intact. June 2014 progress notes reflect [Plaintiff's] mood was more labile with her dosages of Cymbalta and Wellbutrin. Her anxiety symptoms were also noted to be under good control with Xanax and Topamax. [Plaintiff's] documented mental status demonstrates a rather stable person, versus the markedly limited person Dr. Pruitt suggests she is.

Tr. at 29 (citations omitted).

As to Dr. Schmits's statement regarding Plaintiff's mental health, the ALJ gave it "little weight." Tr. at 29; see Tr. at 28-29. The ALJ explained that "[t]his is not Dr. Schmits'[s] field of practice, as Dr. Schmits is not a licensed psychologist." Tr. at 29. According to the ALJ, "Dr. Schmits did not administer a formal mental health examination," and she "merely offered a mental[-]related diagnosis secondary to self-reports." Tr. at 29.

Upon review, the undersigned finds that the ALJ did not err in assigning "no weight" to Dr. Pruitt's opinion. The ALJ summarized the treatment notes from Dr. Pruitt, Tr. at 26, and determined that the limitations he assigned in the Mental RFC Assessment were inconsistent with his own treatment notes, Tr. at 29. In noting this inconsistency, the ALJ provided an adequate reason for discounting Dr. Pruitt's opinions. See Hargress, 2018 WL 1061567. This reason is supported by substantial evidence in the record.

In the Mental RFC Assessment, Dr. Pruitt opined Plaintiff had moderate to marked limitations in performing certain work-related tasks, see Tr. at 438-39, but his treatment notes show that Plaintiff's mental health symptoms were under good control with medication and that Plaintiff was not as limited as Dr. Pruitt's opinion in the Mental RFC Assessment indicates she was, see, e.g., Tr. at 342 (March 19, 2012 treatment note indicating that Plaintiff was "a pleasant cooperative female with good eye contact and good spontaneous speech"; her

"orientation, memory and cognitive functioning were intact, except she was unable to abstract a proverb"; "[s]he had no hallucinations, delusions, suicidal or homicidal ideation"; and "[h]er insight and judgement were intact"); Tr. at 343 (May 1, 2012 treatment note indicating that Plaintiff's "anxiety and mood symptoms are much better now"); Tr. at 347 (February 7, 2013 note indicating Plaintiff's "mood has been better overall" and that Plaintiff denied "depression, appetite disturbance, psychosis, paranoia, suicidal ideation, homicidal ideation [and] agitation"); Tr. at 368-69 (July 9, 2013 treatment note indicating that Plaintiff's "mood has been better with less depression" after changing her medication, "[h]er anxiety symptoms are still under control with the use of the Xanax," and "she feels more functional from that standpoint"); Tr. at 371-72 (June 5, 2014 treatment note indicating Plaintiff denied depression, her "mood has been fairly good," and her "anxiety symptoms are under good control on the Xanax and Topamax"); Tr. at 447-48 (August 22, 2014 treatment note indicating Plaintiff "has done fairly well with her mood and anxiety symptoms since her last visit" and "[h]er anxiety symptoms are also fairly good using Xanax and Topamax").

The undersigned also notes that the opinions expressed in the Mental RFC Assessment are conclusory and are not accompanied by objective medical evidence. See Hargress, 2018 WL 1061567; Schnorr, 816 F.2d at 582. Dr. Pruitt checked boxes indicating that Plaintiff had some moderate to marked limitations, but he did not provide any support or explanation for those opinions. See Provenza v. Comm'r of Soc. Sec., No. 2:15-cv-432-FTM-CM, 2016 WL 3475641, at *6 (M.D. Fla. June 27, 2016) (stating that "[f]orm questionnaires or so-called 'checklist' opinions generally are disfavored"); Hammersley v. Astrue, No. 508-cv-245-OC-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) (noting that "courts have found that check-off forms . . . have limited probative value because

they are conclusory and provide little narrative or insight into the reasons behind the conclusions").

As to Plaintiff's argument that the ALJ erred in not specifically addressing certain findings made by Dr. Pruitt, this argument fails because the ALJ did not broadly reject this evidence in a manner that frustrates judicial review. See Dyer, 395 F.3d at 1211. A review of the ALJ's Decision reflects that he summarized and considered the medical evidence and opinions in the record sufficiently for the undersigned to find that his assessment of Dr. Pruitt's opinion is supported by substantial evidence.

Moreover, the ALJ did not err in finding that Dr. Schmits's opinion was entitled to "little weight," while Dr. Pruitt's was entitled to "no weight." Tr. at 29. Plaintiff apparently argues that Dr. Pruitt's opinion should have been given more weight than Dr. Schmits's because Dr. Pruitt is a treating psychiatrist and Dr. Schmits examined Plaintiff only once. This argument is to no avail because, as noted, the ALJ essentially discounted Dr. Schmits's opinion by giving it "little weight." Tr. at 29. In any event, as noted, the ALJ did not err in rejecting Dr. Pruitt's opinion.

In sum, the undersigned finds that the ALJ's reason for assigning "no weight" to Dr. Pruitt's opinions in the Mental RFC Assessment shows "good cause," and this reason is supported by substantial evidence. Further, the ALJ did not err in assigning slightly more weight to Dr. Schmits's opinion than to Dr. Pruitt's opinion.[8]

---

[8] To the extent Plaintiff argues that before discounting Dr. Pruitt's opinion, the ALJ could have "re-contacted Dr. Pruitt for additional information, obtained a mental consultative examination, or requested review of the entire case file and testimony from a medical expert," Pl.'s Mem. at 18 (citations omitted), this argument is meritless as the ALJ was not required to take any of these actions, see 20 C.F.R. §§ 404.1520b(c), 404.950(d)(1).

## V. Conclusion

After a thorough review of the entire record, the Court finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 15, 2018.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of record